Nat WILLIAMS, Petitioner,

v.

Dennis BRESLIN, Respondent

No. 02 Civ. 10214(VM).

United States District Court, S.D. New York.

July 29, 2003.

Nat Williams, Staten Island, NY, pro se.

---

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* petitioner Nat Williams ("Williams"), currently incarcerated at the Arthur Kill Correctional Facility ("Arthur Kill") in Staten Island, New York, commenced this action against Dennis Breslin, Superintendent of Arthur Kill (the "State"), seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Williams alleges denial of various of his rights under the United States Constitution in connection with his conviction for assault in the first degree in violation of New York Penal Law § 120.10(1). The State now moves to dismiss Williams's petition as untimely pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 2244(d)(1). For the reasons discussed below, the State's motion is GRANTED.

### I. BACKGROUND

On August 19, 1996, Williams and James Lucas ("Lucas") had an altercation involving a machete. In the course of the incident, Lucas sustained physical injury. (*See* New York Supreme Court Brief for Defendant–Appellant dated February, 1999 ("Williams's Appellate Br.") at 9.) As a result of the incident, Williams was charged with attempted murder in the second degree, assault in the first degree, and assault in the second degree. Williams asserted a justification defense in response to the charges, but was convicted after a jury trial in the Supreme Court of New York, Bronx County, of assault in the first degree. (*See* Affidavit In Support Of Motion To Dismiss Petition For Habeas Corpus dated February 13, 2003 (the "State's Affidavit") at 4.) [1]

On November 18, 1997, Williams filed timely notice of appeal of his conviction. In February 1999, through assigned appellate counsel, Williams filed an appellate brief with the Appellate Division of the New York State Supreme Court, First Department (the "Appellate Division"), raising a due process claim. (*See* Williams's Appellate Br. at 2) In the brief, Williams argued that the trial court deprived him of his due process right to a fair trial by including a "duty to retreat" instruction in its justification charge when there was no question that the incident occurred in Williams's dwelling. (Williams's Appellate Br. at 19.) Williams's conviction was unanimously upheld by the Appellate Division on June 15, 1999. *See People v. Williams*, 262 A.D.2d 138, 690 N.Y.S.2d 447, 447 (App. Div. 1st Dep't 1999). The New York Court of Appeals, on September 2, 1999, denied Williams's application for leave to appeal. *See People v. Williams*,

---

1. Williams disputes the specific date of the conviction in his Traverse dated June 20, 2003 (the "Traverse") at 1, but the precise date is immaterial to the resolution of the instant motion.

93 N.Y.2d 1046, 697 N.Y.S.2d 878, 720 N.E.2d 98, 98 (1999).

On January 31, 2001, Williams filed an application for a writ of error *coram nobis* with the Appellate Division, claiming that his appointed appellate counsel was ineffective for failing to raise the following claims: (1) the prosecution failed to prove its case beyond reasonable doubt; (2) the State trial court used coercive tactics to force the jury foreperson to remain on the jury despite her requests for permission to be excused because of illness; (3) Williams was prejudiced by the portion of the prosecution's summation that referred to Williams's intentions with regards to the altercation; and (4) Williams's trial counsel was ineffective. (*See* Notice of Motion for Writ of Error *Coram Nobis* dated January 20, 2001 (attached as Ex. 4 to the State's Affidavit).) Williams's application for writ of error *coram nobis* was denied on November 1, 2001. *See People v. Williams,* 287 A.D.2d 947, 734 N.Y.S.2d 528, 528 (App. Div. 1st Dep't 2001).

While his application for writ of error *coram nobis* was still pending, Williams filed, on July 12, 2001, a motion to vacate his conviction, under New York Criminal Procedure Law § 440.10 claiming ten separate bases for relief. (*See* Notice Of Motion To Vacate Judgment dated July 12, 2001 (attached as Ex. 6 to the State's Affidavit).) On October 10, 2001, the New York State Supreme Court, Bronx County, denied all ten bases for relief as procedurally barred. *People v. Williams,* No. 6139/96, slip op. (N.Y.Sup.Ct. Oct. 10, 2001) (attached as Ex. 8 to the State's Affidavit). On April 16, 2002, the Appellate Division denied leave to appeal. *People v. Williams,* No. M–1 011, slip op. (App. Div. 1st Dep't Apr. 16, 2002) (attached as Ex. 9 to the State's Affidavit).

On December 26, 2002, Williams filed a Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody dated September 9, 2002 (the "Petition"), raising the following claims: (1) the evidence before the grand jury was legally insufficient to establish the charge of assault in the first degree; (2) the State failed to disprove his justification defense beyond a reasonable doubt; (3) Williams was denied a fair trial when the prosecutor introduced fraudulent pictures into evidence; (4) the jury charge on justification was deficient; and (5) Williams's appellate counsel was ineffective. The State now moves, pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. 2244(d)(1), to dismiss Williams's Petition as untimely.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

The State's motion to dismiss is governed by 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), and by the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure apply in the context of habeas actions to the extent that they are not inconsistent with the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"). *See* Habeas Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."); Fed.R.Civ.P. 81(a)(2) ("These rules are applicable to proceedings for … habeas corpus … to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases … and has heretofore conformed to the practice of civil actions.").

■ Motions to dismiss habeas petitions on procedural grounds pursuant to Rule 12(b)(6) are not inconsistent with the Ha-

beas Rules, given the wide discretion afforded district judges in the disposition of habeas petitions. *See Purdy v. Bennett,* 214 F.Supp.2d 348, 353 (S.D.N.Y.2002) (rejecting a challenge to the applicability of Rule 12(b)(6) motions to dismiss in habeas corpus proceedings, and noting that the Habeas Rules "provide that, rather than require the filing of an Answer ... the Court may 'take such other action as the judge deems appropriate.'" (quoting Habeas Rule 4)); *Ukawabutu v. Morton,* 997 F.Supp. 605, 608 (D.N.J.1998) ("The district court certainly has discretion to order or permit respondents, upon request, to file a motion to dismiss as one of the 'other actions' which the court may allow, including the discretion to permit the filing of a motion to dismiss before a respondent files an answer." (quoting Habeas Rule 4)).

■■■ Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Lerman v. Bd. of Elections,* 232 F.3d 135, 140 (2d Cir.2000). In considering the State's Motion To Dismiss, the Court must accept all well-pleaded factual allegations in the Petition as true and draws all reasonable inferences in favor of the petitioner. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McGinty v. State of New York,* 193 F.3d 64, 68 (2d Cir.1999). The Court must "confine its consideration 'to facts stated on the face of the [Petition], in documents appended to the [Petition] or incorporated in the [Petition] by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of*

N.Y., 199 F.3d 99, 107 (2d Cir.1999) (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)); *accord Mack v. Artuz,* No. 01 Civ. 11832, 2002 WL 31845087, at *2 (S.D.N.Y. Dec.19, 2002). Because Williams is proceeding *pro se,* his Petition "must be read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

### B. TIMELINESS

The AEDPA imposed a one-year limitations period for the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period runs from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, 28 U.S.C. § 2244(d)(2) allows for statutory tolling, providing that "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim

is pending shall not be counted toward any period of limitation under this subsection."

■ In determining the statutory window for the filing of Williams's Petition, subsection (A) of § 2244 is the applicable provision. For purposes of the AEDPA, "direct review" includes the opportunity to file for a writ of certiorari from the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001) (noting that "federal courts have long considered the phrase 'final by conclusion of direct review' to include an opportunity to seek certiorari.... We agree and hold that the AEDPA limitations period ... does not begin to run until ... either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." (citations omitted; internal quotations omitted)); *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998) (noting that petitioner's conviction became final for AEDPA purposes "when his time to seek direct review in the United States Supreme Court by writ of certiorari expired...."). The time for seeking such review expires 90 days after entry of judgment. *See* Supreme Court Rule 13 ("[A] petition for a writ of certiorari to review a judgment in any case ... is timely when it is filed ... within 90 days after entry of the judgment."). The New York Court of Appeals denied Williams leave to appeal on

September 2, 1999, and this judgment became final 90 days thereafter, on December 1, 1999.

■ Williams next sought post-conviction relief in a writ of error *coram nobis* on January 31, 2001.[2] (*See* State's Affidavit at 5.) Effectively, the Court's inquiry should end at this point because as of January 31, 2001, more than one year had already elapsed from the date Williams's conviction became final, rendering any subsequent basis that would otherwise toll the applicable limitations period inapposite. Tolling does not reset, but merely pauses the statute of limitations clock. *See Smith v. McGinnis*, 208 F.3d 13 (2d Cir.2000) (holding that AEDPA one-year limitations period does not restart after being tolled). Williams's Petition filed on December 26, 2002 is thus untimely.

■ Williams, however, urges that the limitations period be equitably tolled by the Court. He suggests that "[i]n this case the statue [sic] was equitably tolled since the State of New York does not have a statue [sic] of limitation on filing an Article 440 motion." (*See* Traverse at 3.) Williams fails to explain exactly why this situation should entitle him to equitable tolling, instead only admonishing the Court to "[l]et the record speak for itself." (*See id.*) Mindful that arguments of *pro se* petitioners should be "read liberally" to "raise the strongest arguments that they

---

**2.** The Court notes that prior to his *coram nobis* application Williams had filed several requests pursuant to New York's Freedom of Information Laws—New York Public Officers Law §§ 84–90 (McKinney 2001)—seeking material related to his conviction, and that he had subsequently initiated proceedings under Article 78 of the New York Civil Practice Law and Rules §§ 7801–06 in an attempt to enforce those requests. Such Freedom of Information requests and Article 78 proceedings do not toll AEDPA's one-year limitation period because they do not constitute "applica-

tion[s] for State post-conviction or other collateral review" within the meaning of § 2244(d)(2). *See Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir.2001); *Bonilla v. Ricks*, No. 00 Civ. 7925, 2001 WL 253605, at *3 (S.D.N.Y. Mar.14, 2001) ("This Court and other judges in this Circuit previously have held that a state FOIL proceeding, or a state Article 78 proceeding, is a civil proceeding and not a 'properly filed application for state post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).").

suggest," *Henderson,* 89 F.3d at 79, the Court understands Williams to suggest that it would be unfair to permit the one-year limitation period to lapse prior to a final determination of all post-conviction procedures at the state level, including an application under § 440. Williams's argument fails to provide the Court with the requisite basis for equitably tolling the AEDPA statute of limitations.

 Williams is correct in his assertions that "the one year period of limitations described in AEDPA ... is not a jurisdictional bar," (*see* Traverse at 3), and that the period can be equitably tolled. *See Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001) ("AEDPA's one-year period is a statute of limitations rather than a jurisdictional bar so that the courts may equitably toll the period." (citations omitted; internal quotations omitted)); *accord McGinnis,* 208 F.3d at 17. Nonetheless, it is well-settled that "[e]quitable tolling applies only in the 'rare and exceptional circumstance[ ],' " *id* at 17 (*quoting Turner v. Johnson,* 177 F.3d 390, 391–92 (5th Cir.1999)) (second alteration in original), and that it is applied as "a matter of fairness where a plaintiff has been prevented *in some extraordinary way* from exercising his rights...." *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996) (citations omitted; emphasis added; internal quotations omitted). The Court sees no basis, and has been presented with none, to conclude that Williams faced a "rare and exceptional circumstance," or was prevented "in some extraordinary way" from timely filing his Petition within one year after final judgment as the AEDPA prescribes. Accordingly, the Court finds no basis to distinguish Williams's Petition from those of countless others similarly bound by applicable state and federal exhaustion and limitations provisions. *See Asencio v.*

*Senkowski,* No. 00 Civ. 6418, 2000 WL 1760908, *2 (S.D.N.Y. Nov.30, 2000) (noting in its refusal to equitably toll that petitioner's explanation was "really not distinguishable from the conditions of numerous prisoners[ ] who are hampered by institutional restrictions....").

 Moreover, the Second Circuit has noted that:

> [t]he word 'prevent' requires the petitioner to demonstrate a *causal relationship* between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) (emphasis added); *see Hizbullahankhamon,* 255 F.3d at 75 (holding that in order to show that "extraordinary circumstances 'prevented' him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing ...." (internal quotations omitted)).

Not only has Williams not made any showing of an "extraordinary" or "rare and exceptional" circumstance warranting equitable tolling, he also fails to show that his circumstances "prevented" him from filing his Petition on time. Even if New York law does not impose a limitation period for filing an application under § 440.10, it also does not *prevent* prisoners from doing so within a given time period. In other words, Williams was free to file his § 440.10 motion within one year of his conviction becoming final, and thus be in a position to comply with the one-year limitations period embodied in AEDPA

§ 2244(d)(1), even though New York law did not require him to do so.[3]

## III. CONCLUSION AND ORDER

For the reasons discussed above, it is hereby

**ORDERED** that Williams's Petition for a writ of habeas corpus is dismissed.

The Clerk of Court is directed to close this case.

As the petitioner has made no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

**SO ORDERED.**

---

**3.** To conclude otherwise would render nugatory the limitation period embodied in § 2244(d)(1).